UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAURA D. BRADEN,                )<br>    Plaintiff,                         )<br>                                           )<br>   v.                                     )<br>                                           )<br>ANDREW M. SAUL, Commissioner of )<br>Social Security                          )<br>                                           )<br>    Defendant.                       ) | Case No. 1:20-CV-056-JD |

## OPINION AND ORDER

Laura D. Braden applied for supplementary security income, alleging that she is unable to work primarily due to anxiety, post-traumatic stress disorder, depression, an auto immune disease, fibromyalgia, chronic pain and fatigue, erythema, annulare, centrifugum, general anxiety disorder, and panic disorder with agoraphobia. Ms. Braden was found to be not disabled in a December 2018 decision. Ms. Braden filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition, and Ms. Braden filed a reply. As explained below, the Court remands the Commissioner's decision.

**I.     Factual Background**

Until she stopped working, Ms. Braden worked as a secretary. Ms. Braden suffers from fibromyalgia, arthritic right foot, depression, anxiety, and post-traumatic stress disorder. (R. 18).

Ms. Braden applied for benefits in 2017. The ALJ issued an unfavorable decision on December 13, 2018. In that decision, the ALJ recognized the following residual functional capacity:

1

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance. The claimant can occasionally stoop and kneel. The claimant cannot crouch or crawl. The claimant must avoid concentrated exposure to unprotected heights. The claimant can understand, remember, and carry out simple instructions. The claimant can perform work that can be done at a flexible and goal oriented pace. The claimant is limited to work within a low stress job requiring only occasional decision-making and only occasional changes in a work setting. The claimant can occasionally interact with the general public and can occasionally interact with co-workers and supervisors other than what is necessary for instruction and task completion.

(R. 20). Finding that Ms. Braden can perform other work in the economy, the ALJ found that she is not disabled. The Appeals Council declined review, and Ms. Braden filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make

independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**III.     Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;

  4. Whether the claimant can still perform past relevant work; and

  5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

  At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV. Discussion**

  Ms. Braden offers three arguments, in support of reversal. She argues that the ALJ erred at step two in finding many of her impairments to be non-severe; that the ALJ erred at step three in considering the listings; and the ALJ erred in assessing Ms. Braden's RFC. The Court finds that the ALJ erred in finding her Sjögren's syndrome was not severe at step two and failing to

4

consider relevant medical evidence in the RFC discussion.

Ms. Braden asserts that the ALJ erred at step two in finding multiple of her impairments non-severe, and then failing to include symptoms related to those impairments in the RFC. At step two, the ALJ must determine the severity of the claimant's impairments. 20 C.F.R. §404.1520(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§416.920(c); 416.921(a). According to 20 C.F.R. § 416.921(b), "basic work activities" means:

> The abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

At step two, the ALJ found that Ms. Braden's autoimmune disease, Sjögren's syndrome, was a non-severe impairment. The ALJ based this on finding that Ms. Braden was on medication to treat her Sjögren's syndrome, and that the record does not reflect any emergency treatment or ongoing treatment for flare-ups of her Sjögren's syndrome. (R. 18). Sjögren's syndrome is an autoimmune syndrome that causes dry eyes and a dry mouth. It often accompanies other immune system disorder, such as rheumatoid arthritis and lupus. Sjögren's syndrome can also cause joint pain, swelling, stiffness, swollen salivary glands, skin rashes or dry skin, persistent dry cough,

and prolonged fatigue.[1] Ms. Braden argues that the ALJ's indication that her condition is non-severe shows a lack of understanding of Sjögren's syndrome.

As an initial matter, it is improper for the ALJ to rely on a lack of emergency treatment in finding her Sjögren's syndrome is not severe. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (finding that it was improper for the ALJ to infer a claimant was not experiencing significant problems simply because specific treatment was not prescribed). It is illogical to assume that an impairment must require emergency treatment in order to be severe. Rather, a severe impairment is one which significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. §§416.920(c); 416.921(a). Nowhere in the regulations does it state that an impairment must require emergency treatment in order to significantly limit one's ability to perform basic work activities. The ALJ erred in finding Ms. Braden's Sjögren's syndrome was nonsevere simply because there was no emergency treatment in the record.

The ALJ also erroneously relied on a lack of treatment "for flare ups" in finding her Sjögren's syndrome is nonsevere. This shows a lack of understanding for Sjögren's syndrome and its treatment. There is no specific treatment for Sjögren's flares, and the treatment is continued medication.[2] Ms. Braden was already taking Plaquenil and Prednisone in addition to Celebrex. (R. 711). Plaquenil is the suggested medication for joint pain for Sjögren's syndrome not controlled by other medications. She also took Prednisone, which is a short-term option for both arthritis and Sjögren's syndrome[3], but she could no longer receive steroid injections due to her other impairments. (R. 1373).

---

[1] https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216 (last visited January 12, 2021).
[2] https://www.hopkinssjogrens.org/disease-information/sjogrens-syndrome/joint-pain/ (last visited January 20, 2021); http://info.sjogrens.org/conquering-sjogrens/what-is-a-sjogrens-flare (last visited January 20, 2021).
[3] https://www.hopkinssjogrens.org/disease-information/sjogrens-syndrome/joint-pain/

The ALJ also asserts that Ms. Braden's Sjögren's syndrome symptoms were controlled with the medication Pilocarpine. (R. 18). However, the record indicates that she had to start Plaquenil in 2017 due to continued symptoms. (R. 711-15). While Plaquenil improved her symptoms, the dosage had to be decreased due to increased anxiety and depression while on Plaquenil. (R. 711, 715, 789, 807, 810). Even while on Plaquenil and noting that it improved her symptoms, Ms. Braden continued to complain of tenderness and joint pain. (R. 711, 789, 807). The ALJ's finding that Ms. Braden's Sjögren's syndrome was controlled, let alone by a single medication, is in error, as the evidence indicates that her symptoms persisted.

In fact, the ALJ ignored large portions of evidence regarding her symptoms related to her Sjögren's syndrome. Ms. Braden reported to her physician in June 2018 that she was having negative side effects to her medication prescribed for symptom relief, and that she could no longer receive steroid injections for her pain due to her conditions. (R. 1373). The ALJ relied on both those injections and Plaquenil, the medication to which she was having negative side effects, to find that her pain was less limiting than alleged. (R. 21). The ALJ provided very little discussion about her pain, either with regards to her fibromyalgia, her arthritis, or her Sjögren's syndrome (all of which have similar symptoms). The ALJ did not discuss further reports of recurring pain and discomfort that Ms. Braden attributed to her Sjögren's syndrome. (R. 1373.). She has gone through multiple medication changes, yet still complained of significant joint pain. (R. 1373, 1379). Ms. Braden also started pain management treatment in June 2018, including a referral to physical therapy. (R. 1006, 1012-13). During her first pain management appointment, Ms. Braden stated that her pain is at an 8/10 on her best days, and at a 10/10 on her worst days. (R. 1006). She further stated that her symptoms are aggravated by bending, standing, and activity. (*Id.*).

7

The reported aggravation of symptoms and continued pain is critical, as the worsening of symptoms occurred after the state agency physicians evaluated her claim. The ALJ provided those state agency physician opinions "considerable weight" (R. 23), and did not consider subsequent evidence in determining that Ms. Braden's Sjögren's syndrome is nonsevere. While the ALJ mentioned this evidence as part of a string of citations to support his finding that Ms. Braden's fibromyalgia and right foot arthritis are less limiting than alleged, he does not discuss the evidence showing worsening symptoms and pain. This Court is not determining that Ms. Braden's Sjögren's syndrome is a severe impairment. However, the ALJ improperly found it to be nonsevere without considering all of the evidence in the record.

The ALJ's errors in discussing Ms. Braden's Sjögren's goes hand in hand with his dismissal of her subjective symptoms regarding her fibromyalgia and right foot arthritis, which manifest similar symptoms as Sjögren's syndrome, including joint pain and discomfort. The ALJ found that Ms. Braden's symptoms of pain were less limiting than alleged, finding that pain medication, psychotropic medication, and physical therapy manage her conditions. (R. 21-22). The ALJ also found that Ms. Braden retains the ability to sit and read, generally gets along with others, is able to drive, and can count money, organize her bills, pay her bills on time, and balance a checking account independently. (R. 22). Ms. Braden asserts that the ALJ erred in evaluating her subjective symptoms.

An ALJ's subjective symptoms analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptoms analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom

8

evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of his pain on his ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

The ALJ relies on normal findings related to her "head, eyes, ears, nose, throat, neck, back, lungs, breasts, heart, abdomen, extremities, pulses, and skin," as well as a lack of "musculoskeletal swelling, redness, tenderness, or joint deformity" to discredit the right foot arthritis and fibromyalgia symptoms. However, none of these normal findings relate to any symptoms related to fibromyalgia and arthritis in the right foot. Normal findings related to the head, eyes, ears, etc., do not disprove joint pain or foot pain. Joint swelling or deformity is not a symptom of fibromyalgia,[4] and therefore it is improper for the ALJ to find that a lack of swelling or deformity discredits Ms. Braden's testimony of continued fibromyalgia pain. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.") Joint swelling is also not a necessary symptom of arthritis, as osteoarthritis is non-inflammatory in nature.[5] The ALJ failed to discredit Ms. Braden's complaints of fibromyalgia and right foot pain with any medical findings related to either condition. Normal findings related to her head, eyes, ears, nose, throat, etc., provide no indication that she isn't suffering from pain in her right foot or pain related to her fibromyalgia. Moreover, the ALJ improperly found that Ms. Braden did not have any tender points. (AR 21). In June and August 2016, Ms. Braden was

---

[4] https://www.medicalnewstoday.com/articles/321682#do-i-have-fibromyalgia-or-ra- (last visited January 14, 2021) (showing that swelling is a symptom of rheumatoid arthritis and not a symptom of fibromyalgia).
[5] https://www.pellahealth.org/services/rheumatology/arthritis-non-inflammatory-vs-inflammatory/ (last visited January 20, 2021).

found to have "multiple fibromyalgia tender points present." (AR 514, 526). Other medical records show tenderness in her sternum, lower lumbar spine tenderness, tenderness in multiple joints, (R. 807, 809). The ALJ erred in discrediting Ms. Braden's subjective symptoms on the basis of cherry picked evidence that does not logically relate to her impairments.

    Ms. Braden also asserts that the ALJ ignored evidence related to her pain, osteoarthritis, and gastrointestinal impairments that were added to the medical record after the state agency medical consultants conducted their review. Ms. Braden began attending pain management, physical therapy, and began working with a new primary care physician after the state agency medical consultants reviewed the evidence. (AR 988, 1006-14, 1455-95, 1373-1410). Her pain management doctor diagnosed her with osteoarthritis in both hips, as well as added chronic pain syndrome to her already existing diagnosis of fibromyalgia. (AR 1013). The only mention of her pain management treatment notes in the ALJ's decision occurs in a citation of multiple medical exhibits used to support the ALJ's finding that Ms. Braden's subjective symptoms were not as limiting as alleged. (AR 21-22). Yet, after fifteen sessions of physical therapy, she was noted to have continued pain and tenderness in her lower back, and she had started having new pain and limited range of motion in her cervical spine. (AR 1461). Her therapist recommended continued physical therapy and stated that Ms. Braden "requires skilled therapy to reduce signs and symptoms and improve function." (AR 1461-62). Moreover, neither the ALJ nor the state agency physicians discussed Ms. Braden's gastrointestinal issues as documented by Dr. Brianna Serbus. Dr. Serbus noted that Ms. Braden's abdominal and periumbilical pain was worsening, and that she was experiencing nausea and vomiting. (AR 771-74). Other portions of the medical evidence showed that Ms. Braden experienced diarrhea, and that her intestinal pain and issues grew worse when her pain was worse. (AR 44-45, 379, 467-68, 608, 758, 1373). While the exclusion of any

10

discussion regarding these impairments or limitations on their own may not be enough for remand, taken all together they indicate that the ALJ did not fully examine all of Ms. Braden's impairments or the combined effect they may have on her ability to function.

The ALJ improperly ignored evidence in evaluating Ms. Braden's Sjögren's syndrome and subjective symptoms. On remand, the ALJ must properly weigh the evidence and make a full and proper analysis of Ms. Braden's Sjögren's syndrome and subjective symptoms. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED: January 26, 2021

/s/JON E. DEGUILIO
Chief Judge
United States District Court